Good morning. I believe we have a motion before the cases are heard this morning. Thank You Judge Mayer. I'd like to now move the admission of Nathan J Davis who is a member of the bar in good standing of the highest court in Texas. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I'd just like to add on my own that I'm not really convinced that he's going to leave us. We're trying to hold on to him as long as we can but that day will probably come soon and I just want to say what a pleasure and a privilege it's been to work with Nate over the past year and we have we've had the benefit of his principled view of the law and his principled view of the world and Nate's seriousness of purpose is matched by a and that combination has kept us all grounded over the past year and when we let Nate leave we'll miss him almost as much as we'll miss Alice and his wife who's kept us fed over the past year and charmed our chambers with his talent with her talents so I'd like to congratulate Nate on his admission and move his admission. Absent dissent the motion will be granted. Please face the I would like to also add a welcome and congratulations on behalf of my other colleagues and we welcome you back to the court when you finally do leave anytime you want to come for social events. Our first case this morning is NRAA Applied Materials 091083. Mr. Teckett. Good morning I represent Applied Materials Israel Limited in appeal number 20091083. We're on appeal from final rejection in the patent office affirmed by the Board of Appeals and all dependent claims are rejected over combination of Levy 203 and with Econaga and sequencing of oblique light which is an IP owned technical disclosure. Some dependent claims are rejected over further combination with Levy 455 for additional elements in dependent claims. The problem you have here it seems to me which is something we see commonly which is that the board is supposed to construe the claims in the broadest sense and they've done that here in a way with which you disagree but with which includes the prior art. So I guess I think we need to be convinced why I mean the government's view is that the language doesn't require the pulse light to be used to create the image and your view is different but it's hard for me to see how the actual language of the reading. Yes your honor my point today will be to try to explain why the claim the board's construction is overly broad not the broadest reasonable construction but a broadest unreasonable construction. Okay. I will address the common error in the independent claims so we will only be talking about Levy 1 Levy 203 not Levy 455 which is only used for additional features. Start the answer to your question the independent claims recite that a pulsating light source illuminates an area of a semiconductor wafer. A CCT matrix acquires an image of the illuminated area of the semiconductor wafer. The board's construction is stating that there's no requirement that the area that's being imaged is actually illuminated by the the pulse light source and we believe that's an overly broad construction because the claim clearly says that the area that's being imaged is the area that's illuminated. This is in reference to claim 133 the representative claim. But where does the claim require that the image be created by using the pulsed light? That's what I'm not seeing. It defines an area as an area that's illuminated by pulse light and then it says you image the area that the illuminated area. The board is arguing that you can turn off the pulse light turn on some other light to take the image and and therefore the claim doesn't really require there to be imaging of the area that's illuminated by pulse light. Which is never an argument raised by the examiner it was only raised by the board and the requests after request for reconsideration. The claim further says there's a processor for analyzing the deep images and detecting defects in the semiconductor wafer. Levy 203 combines a continuous light source with two diode lines that scan separate two separate images of two areas on the wafer. It also has a processor that compares the scan images to find the defects. Two diodes on each side of the optics focus each image each of the images by seeing laser light that's pointed at periphery of the image. The laser light is not pointed at the line the line of diodes that's doing the line scanning. It's only on the periphery where it's not seen by the line scanners and therefore not imaged. It's only used for focusing only it's not it's like focusing a camera without taking a picture or pulse light is received to form an image that is processed. Before your time runs out can I just turn you to the question of waiver which is raised in the government's brief. The question of waiver. Waiver the supposed two basis for rejection. Yes my understanding is and you addressed it in the gray brief but I'm not sure maybe I'm misunderstanding what the government's point is but as I understood the government's point is that the examiner's rejection was based on the fact that one skilled in the art would have known to go the extra step not that the references teach that but that one skilled in the art would have known that. The examiner. Just let me finish and I don't see at least certainly not in your blue brief that you've raised that on appeal that conclusion. In other words even if we were to overturn what the board did that you've made the appeal we'd still have that basis for rejection that hasn't been challenged here. Right it was our position in the blue brief and it remains our position there's only one rejection on appeal that the board although they affirmed the examiner they clearly changed the analysis. Well didn't they posture that as an alternative rather than displacement of the analysis of the examiner? Well the examiner we challenged the examiner on whether or not there was any support for his statement of obviousness his motivation for obviousness and he provided one reference to argue that there was support for that the pulse light would actually improve imaging of using pulse light would actually improve imaging. That one reference was not made of record in the rejection although it is in the file. Counsel let me try to first question it again because I'm I want to make sure I understand your answer. If we construe the original board decision by or Judge Dixon as affirming the examiner's rejection on the basis of Levy and Ekenaga and the IBM reference and we construe that decision as also offering a second new additional reason for rejection. As I understand Judge Prost's question she is expressing concern that in your blue brief you are not addressing in particular the original basis of the examiner's rejection namely Levy with Ekenaga and IBM and therefore you have waived the appeal of that so even if we were to agree with all the arguments in your blue brief vis-a-vis Levy that you're still stuck with a rejection you did not properly appeal. So make sure I understand exactly your point as to how you did properly appeal that in your blue brief. Yes your honor the original rejection was modified by the board and we did address the reasons that the board modified it. They clearly replaced the additional reference that the examiner brought in with Levy the pulse light in Levy. Okay counsel why don't you turn to the board's original opinion you won't even go to the rehearing opinion yet at page 5 of the original opinion in the back of your blue brief it's at JA 6 if that helps and the second sentence from the top it says we agree with the examiner that in the combination of Levy with Ekenaga with the CCD camera it would have been readily apparent to those skilled in the art blah blah blah then it says furthermore we find pulse light source and it explains that and which you know by the way is a technical matter I personally think that's kind of troubling but it's not something that you seem to have appealed but then the next word is additionally we note that Levy at 203 teaches this by itself. Well why is it that you think that since they say we agree with the examiner and the examiner and actually cite out the various references the examiner used then say additionally we think Levy also teaches it so you don't even need those extra references why does that suddenly constrict into a single new rejection that isn't simply affirming the examiner I agree with you they've also rejected on the basis of Levy but I'm having trouble with how they didn't you know articulate two bases of rejection. We clearly challenged the examiner's upon a reference to support and the paragraph you're citing to has the same language that there would be that it would be generally obvious to use pulse light to prevent interference between images received by a camera using Japanese reference. And your expert absolutely contradicted that in his declaration as far as I can tell the problem is I don't see any arguments to this effect in your blue brief. That's because the board did not use the board continues in the same paragraph to say they don't rely on that. Where do they say they don't rely on that? It falls over to the next page. Okay so tell me exactly. It says since the examiner has not relied upon this reference we have not considered in our decision. Where are you? I'm having trouble where are you? It's JA0007 over to JA008. No that's the Japanese patent that hasn't the examiner did not rely upon it's not Ikanaga. They're not. You see in the and then they said but since the examiner has not relied upon this reference so this I mean what you're pointing to is a full page and a half beyond the discussion I'm talking about of Levy and Ikanaga and at the point you're pointing to they're talking about something completely different. It's the same paragraph your honor and it's the same paragraph no no sir it's page 5 of the opinion the top paragraph is what I'm talking about and you're talking about page 6 let's see 1, 2, 3, 4, 5 paragraphs later page 6 spanning on to page 7. Our position remains your honor that the board changed the decision they've clearly said here looking at page 6 to page 7 that they we challenged the examiner whether or not that interference with images was actually supported by any reference and the examiners said he didn't have one yet he wouldn't found another one but he did not make it part of the rejection. The board says he can't do that he can't go out and get another reference for the final rejection and use that to support and not make it a new ground of rejection and use Levy's pulse light instead. So we do not see a affirmance of Levy's of not using Levy's pulse light you know the board totally based their analysis on the pulse light in Levy and then on the reconsideration when we pointed that out to them they responded that the claim is too broad anyway it doesn't require pulse light. They didn't go back and say well the examiner's original analysis is totally correct we've made a mistake basing it on Levy. Wait you're saying they didn't on rehearing okay page 3 of their hearing brief we note our decision at page 5 indicates we agree with the examiner's combination of Levy with Ikenaga and the use of pulse light or a flash source as used with the camera would be desirable for still images. We additionally found Levy 203 uses modulated or pulse light. I don't see how these two opinions either one of them should be read as disagreeing with the examiner when in both instances they say we agree with the examiner's combination that renders this claim obvious and they go on to articulate second and discreet reason but. Yes your honor I believe what they're saying though is that they believe with they believe in the combination of references they're not saying they really agree with the examiner's analysis they expressly threw out the examiner's analysis of the motivation the examiner had and pretty much replaced it with Levy's pulse light and didn't even really discuss the IBM disclosure of pulse light they focused on Levy which to us is prejudicial error because it now makes it now it now is an erroneous construction of Levy which then ends up falling in our claim scope. I'll issue it from the government now and we'll give you some time before we vote okay. Thank you your honor. Mr. McManus let's start with what the board did the board affirmed the examiner's rejection for the reasons expressed by the examiner and made these additional observations about Levy's pulse light. Is that how you're reading the paragraph that Judge Moore pointed the appellant's counsel to? Correct. Is that what you're referring to? Correct. If you look at that's JA6 and actually starting slightly earlier on JA5 it says the examiner maintains this is the first the last paragraph on JA5 the board begins to recite the examiner's rejection combination of IBM with Levy using pulse light to prevent interferences between successive images. The board in the next sentence says the use of a CCD camera would have been obvious. It then says we agree with the examiner that once you take the CCD camera to capture the image and you put it into the detection system of Levy it would have been readily apparent quote to those skilled in the art that discrete images of the sample would have been desirable. That's the prevent interference rationale of the examiner. And then they go on to make the additional observation of these kinds of cameras come with pulse lights to capture still images and that's what the system seeking to do with the CCD camera. It wants to take a still image of a moving semiconductor wafer. How do we get a still image of a moving object using a camera? We freeze it in time by flashing light on it. So there the board very clearly affirms not only the examiner's rejection but for the reasons the examiner put forth. And confirmation of this comes on JA8 later in the opinion. First full paragraph. Can I point you to page 8 of the blue brief? In the summary of the argument why isn't the first sentence in that summary sufficient to cover anything and everything? Your Honor that's a generic statement that in essence obviousness has not been shown. I mean there's no. But he's not just referring to Levy he's referring to all the references in combination whether they show suggest or make obvious. I mean isn't that wasn't this isn't this a fair articulation of the board of the examiner's conclusion? It is but then the brief does not offer any argument to demonstrate why. That's a conclusory sentence. It simply says the obviousness rejection is is not right. Well then it comes down to you know how we parse whether or not something's been waived. Is it because they didn't raise it in the lead sentence of a summary of the argument? It's hard for me to say that therefore it wasn't raised. No? I mean they may not have put in forth any detailed argument but they certainly put this front and center in what they're arguing on appeal. No? Two responses Your Honor. Even if you say this raises the issue nothing in the argument supports the notion that the examiner's rejection was improper. All the argument. Counsel aren't we supposed to go back and review the record for substantial evidence in light of the arguments put forth? Right and the arguments that are put forth here are all about Levy's teaching the board's additional observation of Levy's pulse laser. Well no I think that you just acknowledged to Judge Prost maybe I misunderstood you but that even if this raises the argument it doesn't put forth even if this raises the issue it doesn't put forth a lot of argument or something. Isn't that what I understood you just tell Judge Prost? There's more than just putting in a conclusory sentence to support this even if you put in a conclusory sentence that says that 103 combination is not correct. You have to support you have to say why and the why in this brief has nothing to do with the examiner's combination. All the why in this brief is about the board's additional observations of Levy's pulse light. I mean we I think we've all acknowledged that they proceeded on the assumption that the board's affirmance is all about Levy's pulse light and his board did make observations and findings and conclusions based on Levy's light it very clearly also affirmed the rationale and the rejection of the examiner. I mean there's nothing in this blue brief that demonstrates error even if you were to agree with him on Levy's pulse light the examiner's rejection still stands because it does not turn on Levy's pulse laser. Yes but the examiner's rejection if we say he didn't waive it then we can look to the substantial evidence of record to ascertain whether the board's supported and there is an expert declaration in the record which granted they don't reference in the blue brief but it's part of the record and we can review the record can't we? Well you can certainly review the record. We submit to you there's no reason here to review the record for evidence supporting the examiner's rejection because it goes uncontested. That sentence there other than blanketly implying that the combination of Levy, IBM and Ikenaga, a loaner in combination does not teach the claim elements is not a proper obviousness argument. You can't just come in and say well the obviousness rejection is wrong without doing any more. Well in your brief though when you raise the issue of waiver you characterize you say fatally before this court applied materials alleges error only in the board's additional discussion. I mean doesn't this sentence at a minimum allege error in terms of the examiner's articulation of the basis for obviousness? Well perhaps reading the sentence demonstrates why our red brief is correct. The next sentence here says the board errs. This is the actual allegation of error. The board errs in affirming the examiner's rejection by reading Levy 1 to inherently inquire an image of an area while illuminated by pulsed light. The error alleged is completely based upon the Levy 1 laser observations by the board. That is the additional observation of the board that has nothing to do with the examiner's case law. You don't raise, you waive an issue even if you blanketly say I think it was wrong, if you don't argue about it, if he doesn't advance a reason to this court, one reason to this court why the examiner's rejection is wrong, he's waived that issue. Under what case? L.A. Trucker. L.A. Trucker. Watts. Watts. An issue not properly raised and that is to say an argument and the cases are escaping me right now. Well but what the sentence says under the heading of argument are that they don't, these references alone or in combination do not teach, show, suggest, or make obvious a system for finding defects. I mean it may not have a lot of meat on it but it's a statement that whose conclusion which would, you know, if we agreed with would end the case. Well I submit to Your Honor that I don't think that's the issue. Even if you say I then want to find he hasn't waived it and you want to look at the examiner's rejection. Leaving aside that he has given you nothing in his blue brief or his reply brief to tell you why he thinks the examiner's rejection is wrong, it's supported by substantial evidence. Looking at the references and the examiner's observations in his final office action and particularly at his answer at 833, appendix of page 833 and 837, the examiner has clearly laid out why it would have been obvious to one skill in the other. I'm going to go back to the Levy. Is it Levy or Levy? Either or. Everybody seems to agree that the pulse light in Levy 1 was used for focusing and not for acquiring image, the image, and so I'm having a hard time how we make the leap from using pulse light for one purpose to using it for other purposes as well. Well the board that dovetails into the claim construction which is the pulse light has to be the one that's actually reflected off the area to be imaged and then captured by the CCD camera. The problem is the claim doesn't explicitly tie together those elements. To be sure it includes a light element and it includes an imaging step but there's no causal line drawn between the actual reflection of the pulse light. Indeed there's no element of reflected light in there. It just simply says I have to illuminate one area and then I have to image the at least one illuminated area. So isn't that suggesting with the there's antecedent basis so we know we're talking about the same thing and it says it has to be illuminated when you're imaging it. So I'm a little concerned because what you're suggesting is that it could be a whole different light source right? Theoretically and to be clear. Does the second light source in any of the embodiments or elsewhere could be what is used during the imaging process? I wasn't able to find it. It does Your Honor. For example at JA 65 well 64 to 65 the specification starting at specification paragraph 202 and running through 206 describes what it calls an improvement in phase two examination which if you read the entire spec the detection system using two phases the first phase is almost a triage type spot potential areas of defects and then the phase two drills down and does a more specific discrete imaging of the potential defect area. And in this particular quote improvement of that examination system it describes illuminating the wafer. This is at the bottom of JA 64. It says the wafer W is illuminated by an illumination unit 400. The next sentence says unit 400 is a mercury lamp. And then later at 206, 205 runs through how the light bounces around to get to the image and then 206 makes clear that the image converter that ultimately receives that light is a CCD cap. So the problem here is the spec to be sure that the spec contemplates that maybe at some level you might use the reflected laser light to capture to generate your image and then capture it. The problem is the claim doesn't make that specific. At a requirement that the area the quote at least one illuminated area actually be illuminated at the time the image is captured by the laser. I'm just trying to understand what you pointed me to on 49 and 50. At 206 the image converter is a CCD camera. Right. But that doesn't indicate does it that the CCD camera is the illuminating source. Yes the CCD camera is what captures the image. Oh that's correct the illumination source is the mercury lamp. Unit 400 is a mercury lamp. It consists of a 200 watt mercury lamp. That's the light source. As paragraph the next paragraph makes clear that light is reflected off the waver runs through a series of lenses and beam splitters and ultimately ends up at the image converter. And you're saying illuminations unit 400 is not the pulsating light source. My understanding is that is a constant light source. The problem fundamentally is the claim that we have. So is there any pulsating light source then in this particular embodiment that you're pointing me to. Not that I can see your honor. So I guess I'm confused. You're pointing to an embodiment and the way that you're reading it this embodiment would not be covered by this claim. Because this claim clearly by your own admission requires a pulsating light source right. Well your honor the claim recites a pulsating light source but not. Let me take two answers your honor. Your question was is there an embodiment in the spec that I saw that uses a constant light source to reflect it and capture it by the image capture device. That is my reading that specification section does that. That does not mean that the claim requires or specific. Is this specification section relevant to this claim? Well. Is this describing an embodiment that could even arguably fall within this claim scope? Arguably it could. The problem is the claim is so broad it could include other. The point is your honor this claim is extremely broad. As the court as the board said. Are there other claims that don't include a pulsating light source anywhere in this system claims and. I'm just trying to figure out if you're reading in the board's reading of this specification at all matches up with these claims. Well I think if we turn to the claim and look at what the claim says. Okay let's do that. Let's turn to claim 133. A pulsating light source for illuminating at least one area. An optoelectric converter for acquiring at least one image of the at least one area. Correct. There's no causal connection. This is what the board was saying. There is no linkage between the illumination using a pulse light source and acquiring the image of that area. It could be that you are illuminating one portion of the area with your pulse light. It says the illuminated area. Right. So why isn't it using antecedent basis referring back to the area being illuminated by the pulsating light source. It is but it is not saying that when I actually. Because remember we acquire an image by reflecting light off something. While it refers to the one illuminated area, it gives you the source or the item that you want imaged. It does not tell you how to image it. It simply refers you back to the substrate. It does not say I generate the image of that substrate using reflected pulsed light. And that is what their reading of this claim would require. And that is why the board's broadest construction is the reasonable one. So help me out here. How would you have the first portion and say a pulsating light source for illuminating the entire area being imaged? I think there are probably multiple ways you could do it. One way for example you could do it, you would not even have to necessarily modify the first element. But in the third, the acquiring, and this is what the board said. The problem is the acquiring step is not defined. So if you want to specifically say that my image capture device acquires an image from reflected pulsed light, you would insert that limitation in there to make it explicit. They say it's not necessary. They haven't said that they would or could be able to do that. But that is fundamentally the defect in this claim, why the board's construction is correct. Suppose I disagree with you. Suppose I agree with appellant that the board's construction is overly broad, not broadest reasonable construction. What happens? Does your waiver argument still stand somehow? Or since this is claim construction and you know I think earlier in this argument you acknowledged that they are raising and have raised this claim construction issue. They definitely raised the claim. So waiver then, if I find ultimately that the claim construction that the board has adopted is improper, which is a matter of law for us, then is, are you agreeing it's not waived? I'm about to run out of my time but I'll respond to your question. The twofold, Your Honor. If you were to find that the claim construction that the board used to respond to their argument about why they're reading of levees, lasers incorrect, that doesn't render fatal the examiner's rejection that was explicitly affirmed and goes, in our view, uncontested because they have not advanced a reason, an argument, why the examiner's combination of levees. Counsel, the claim construction argument would apply equally to both. There's no basis for distinguishing it based on the IBM disclosure. Well, there is, Your Honor, because that claim construction is entirely tied in with their argument about why the additional observation of course by the board of levees, pulse, laser doesn't render the claim obvious. The examiner's rejection does not rely upon levees, pulse, laser at all. The examiner's rejection is all about, if I start with levees detection system and everybody, nobody seems to have a problem with that, and I put in the CCD matrix, which again nobody seems to have a problem with that, their own specification says that these kind of detection systems, we're all using CCD matrixes. What, the only element that we don't have is pulse laser, so even under their construction where your pulse light is the actual light that's being reflected and imaged by your image capture device, that was taught by IBM. The board agreed with that and gave you additional reasons, including the fact that sort of everybody in the art understood that the minute you moved to an image capture device that was a pulse light, you have migrated from a constant light source to a pulse light source, because that's how they work. Alright, thank you. Addressing the solicitor's last point, your honor, he stated that as soon as you move from a CCD, from a line scanner to a CCD matrix, you would then switch to a pulse light. ICANAGUA is a CCD matrix and uses a constant light, so that is not a correct statement, it's not based on the record. Also, getting back to the question of waiver, in our page 10 of the blue brief, in our statement of the argument, we also say the examiner and the board erred in rejecting all independent claims under 103 because no sighted reference teaches or suggests acquiring an image of an area but a semiconductor wafer eliminated by pulse light. ICANAGUA doesn't do it, doesn't even have a pulse light. Levy's pulse light is only the focusing system and in IBM, they do use a rotating sequence of lamps, but it's a visual eyeball inspection, there's no image acquisition device. So no reference actually used pulse light to compare and analyze images. And that's why the board switched to focusing light in Levy, but they switched in error. Their original position was that the line scanners in Levy actually received some of that pulse light. When we clarified that on reconsideration, they just responded the claim is too broad. And so we believe that all rejections are in error and that they should be reversed by the board. Board's rejections should be reversed and that there is no waiver of any argument by the examiner. Thank you, Your Honor. Thank you. Case is submitted.